**IN THE COURT OF APPEALS OF IOWA**

No. 24-0596
Filed March 5, 2025

**IN THE INTEREST OF O.M. and N.M.,**
**Minor Children,**

**K.M.,**
        Petitioner-Appellee,

**A.J.,**
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Butler County, Peter B. Newell, Judge.

A father appeals the order terminating his parental rights to his minor children. **AFFIRMED.**

Mark A. Milder, Denver, (until withdrawal) and Elizabeth Wayne, Parkersburg, for appellant.

Jesse Marzen of Marzen Law Office, P.L.L.C., Waverly, for appellee.

Nellie D. O'Mara of O'Mara & Sprecher, Mason City, attorney and guardian ad litem for minor children.

Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**AHLERS, Judge.**

A mother and father were unmarried but living together when they had two children—one born in January 2020 and the other born in December 2020. In August 2021, the father was arrested for domestic-abuse assault against the mother. He was convicted, and a no-contact order was issued prohibiting the father from contacting the mother for five years.

In 2023, contending the father had no contact or communication with the children and had not provided financial assistance of any kind since his arrest, the mother petitioned to terminate the father's parental rights based on abandonment under Iowa Code section 600A.8(3)(b) (2023). After a trial, the juvenile court determined the mother proved statutory abandonment and found terminating the father's parental rights to be in the children's best interests. The court granted the petition and terminated the father's rights. The father appeals.

## I.      Standard of Review

We review termination orders under chapter 600A de novo. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). We give weight to the juvenile court's fact findings, particularly as to witness credibility, but we are not bound by them. *Id.*

## II.     Analysis

The mother claims abandonment under section 600A.8(3)(b), which states:

> If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.

(2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

(3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Abandonment occurs when a parent rejects "the duties imposed by the parent-child relationship." Iowa Code § 600A.2(20).

## A.    Applicability of section 600A.8(3)(b)

We start by addressing a gateway issue raised by the father. The father contends he has no parental rights to terminate because he is not listed as the father on either child's birth certificate and his paternity has not been established by administrative or court order. Therefore, he contends he is only a putative father. *See id.* § 600A.2(17) (defining putative father as "a man alleged to be or who claims to be the biological father of a child born to a woman to whom the man is not married at the time of birth of the child"). And since the abandonment statute at issue—section 600A.8(3)(b)—only applies to a parent and not a putative parent, the father contends the statute does not apply to him.

We reject the father's argument. While it is true the father is not named the children's birth certificates, neither is any other man. And, while it is also true that his paternity has not been established through administrative or court proceedings, the definition of "parent" in the statute imposes no such requirement. Section 600A.2(15) defines "parent" simply as "a father or mother of a child, whether by birth or adoption." The record here raises no doubt as to the father's paternity. The mother, the father, and family members of both testified that he is the father

to both children.  No evidence to the contrary was presented.  Given this record, section 600A.8(3)(b) applies to the father.

### B.    Abandonment

We turn to the substance of the father's claims on appeal.  To terminate the father's rights under chapter 600A, the mother was required to prove two elements by clear and convincing evidence: (1) statutory abandonment and (2) termination is in the children's best interests.  *See B.H.A.*, 938 N.W.2d at 232.  The juvenile court found the mother proved both elements.  The father challenges both.

### 1.    Statutory Ground

Abandonment under section 600A.8(3)(b) has financial-support and contact requirements.  *In re G.D.*, No. 20-0984, 2021 WL 2126174, at *3 (Iowa Ct. App. May 26, 2021).  We have colloquially referred to these as "cash" and "contact" requirements.  *Id.*  To establish abandonment, the petitioning parent must prove the other parent's failure to meet *either* the cash or contact requirement—it is not necessary for the petitioning parent to prove both.  *Id.*  While the juvenile court found the mother proved the father's failure to meet both requirements, we choose to focus on the contact requirement.

To establish the father's failure to meet the contact requirement, the mother had to prove: (1) the father failed to visit the children at least monthly when physically and financially able to do so and when not prevented from doing so by the mother; (2) the father failed to regularly communicate with the children or with the mother when physically and financially unable to visit the child or when prevented from visiting the child by the mother; and (3) the father failed to openly live with the children for a period of six months within the one-year period

immediately preceding the termination-of-parental-rights hearing and during that period openly held himself out to be the parent of the children. *See* Iowa Code § 600.8(3)(b)(1)–(3).

Following our de novo review, we find clear and convincing evidence that the father failed to meet all three of the contact requirements of section 600A.8(3)(b)(1) through (3). There is no persuasive evidence that the mother prevented visits by or communication from the father. And it is undisputed that the father did not visit the children at all or live in the same household with them during the two-and-one-half-year period ending with the termination hearing, satisfying the mother's proof requirements under section 600A.8(3)(b)(1) and (3). Likewise, the evidence establishes the father made no effort to contact the children. He did not phone or write them, and he sent no cards or gifts. On the few occasions he reached out to his children's maternal grandmother, he didn't ask about the children or request to communicate with them. This satisfies the mother's proof requirement under section 600A.8(3)(b)(2).

The father doesn't meaningfully challenge the juvenile court's finding that he failed to meet the contact requirements of section 600A.8(3)(b)(1) through (3). Instead, he seeks to excuse his lack of contact. He contends his regular incarceration for various offenses and the no-contact order preventing his communication with the mother during the two-and-one-half-year period leading to the termination hearing prevented him from visiting or communicating with the children. We reject both arguments.

As to his incarceration, our cases are clear that a parent cannot use incarceration as justification for failing to maintain a parent-child relationship. *See*

*B.H.A.*, 938 N.W.2d at 234. This is especially true when incarceration stems from a parent preferring a lifestyle that leads to incarceration at the expense of a relationship with the parent's children. *See id.* That is what we have here. The father has been incarcerated for a variety of controlled-substance and domestic-violence crimes. Even after the father was released from jail or prison, he continued to choose drugs and domestic violence over a relationship with his children. His resulting incarceration does not preclude a finding of abandonment.

As to the no-contact order, we view this hurdle much like we view incarceration—it is one of the father's own making. We also note that the no-contact order prohibited the father from contacting the mother, not his children. We recognize that the no-contact order prohibited contacting the mother through third parties, which posed a challenge as to how to communicate with the young children in the mother's care. But the father made no effort to overcome this challenge. For example, he made no effort to modify the no-contact order to permit communication with the mother about the children. There is no evidence he spoke with prison officials, his probation officer, or his parole officer about ways to communicate with the children within the confines of the no-contact order. While it is speculative whether such efforts would have succeeded, the father's failure to explore them speaks volumes as to his priorities—priorities that clearly did not involve his children. We decline to excuse the father's failure to meet the communication requirements of section 600A.8(3)(b)(2) because of the no-contact order. The order was put in place because of the father's own poor choices. And we need not decide whether efforts to modify a no-contact order or trying unsuccessfully to communicate with the children within the confines of such an

order would be enough to defeat a finding of abandonment because the father made no such efforts here.

We agree with the juvenile court that the mother proved statutory grounds for abandonment under section 600A.8(3)(b). We reject the father's challenge to the statutory grounds and turn our attention to his best-interests challenge.

### 2. Best Interests of the Children

In determining the best interests of a child, we examine whether a parent has actively assumed responsibilities of parenthood by considering factors such as the fulfillment of financial obligations, continued interest in the child, genuine efforts to maintain communication with the child, and the establishment and maintenance of a place of importance in the child's life. Iowa Code § 600A.1(2). We also draw from the statutory best-interest framework outlined in Iowa Code chapter 232, which directs the court to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2); *see In re A.H.B.*, 791 N.W.2d 687, 690–91 (Iowa 2010) (finding it useful to apply the best-interest framework of section 232.116(2) and (3) to the best-interest analysis under chapter 600A).

While the father speculates that he may develop a positive relationship with the children in the future, there is no persuasive evidence in the record that terminating his parental rights would be contrary to the children's best interests. *See A.H.B*, 791 N.W.2d at 691 ("We cannot deprive a child of permanency after the petitioner has proved a ground for termination by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (cleaned

up)).  In fact, the evidence clearly and convincingly establishes that termination is in the children's best interests.  The father has no presence in the children's lives, and he had not seen them for two and one-half years at the time of the termination hearing.  During that time, the father was in and out of correctional facilities due to multiple charges related to drug possession and domestic violence, and he was incarcerated awaiting parole revocation proceedings at the time of the termination hearing.

The father's final argument is that termination is not in the children's best interests because the mother has no plans to replace him with another father figure who can provide financial, emotional, and other support.  This line of reasoning is unconvincing.  The mother has already proven herself to be the only parent who consistently cares for and provides for the children's needs, and she has shown the ability to do so on her own.  Additionally, she has support from her parents, both of whom can serve as supplemental parental figures for the children as they grow up.  She also has seven siblings in the area willing to support her and the children.  Following our de novo review, we agree with the juvenile court's finding that terminating the father's rights is in the best interests of the children.

## III. Conclusion

As the juvenile court correctly determined the father abandoned the child pursuant to section 600A.8(3)(b) and termination is in the children's best interests, we affirm the decision to terminate the father's parental rights.

**AFFIRMED.**